APPEAL,CLOSED,TYPE I−FOIA

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:22−cv−03029−BAH</u>

AMERICA FIRST LEGAL FOUNDATION v. U.S. DEPARTMENT OF AGRICULTURE et al
Assigned to: Judge Beryl A. Howell
 Case:  1:22−cv−03034−BAH
Cause: 05:552 Freedom of Information Act

Date Filed: 10/06/2022
Date Terminated: 07/18/2023
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**AMERICA FIRST LEGAL FOUNDATION**     represented by     **Reed Darrow Rubinstein**
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue, SE #231
Washington, DC 20003
(202) 964−3721
Email: reed.rubinstein@aflegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gene Hamilton**
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
202−964−3721
Email: gene.hamilton@aflegal.org
*ATTORNEY TO BE NOTICED*

**Michael Ding**
611 Pennsylvania Avenue, SE #231
Washington, DC 20003
(202) 964−3721
Email: michael.ding@aflegal.org
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. DEPARTMENT OF AGRICULTURE**     represented by     **Brian C. Rosen−Shaud**
U.S. DEPARTMENT OF JUSTICE
Federal Programs Branch
1100 L Street

1

Rm. 12022
Washington, DC 20530
202−305−7667
Email: brian.c.rosen−shaud@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
U.S. DEPARTMENT OF JUSTICE
1100 L Street
Ste 11008
Washington, DC 20530
(202) 305−8177
Fax: (202) 616−8470
Email: laurel.h.lum@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF EDUCATION** | represented by | **Brian C. Rosen−Shaud** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Laurel H. Lum** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF ENERGY** | represented by | **Brian C. Rosen−Shaud** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Laurel H. Lum** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **U.S. ENVIRONMENTAL PROTECTION AGENCY** | represented by | **Brian C. Rosen−Shaud** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Laurel H. Lum** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Defendant**

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**  represented by  **Brian C. Rosen−Shaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF HOMELAND SECURITY**  represented by  **Brian C. Rosen−Shaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF THE INTERIOR**  represented by  **Brian C. Rosen−Shaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF LABOR**  represented by  **Brian C. Rosen−Shaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. SMALL BUSINESS ADMINISTRATION**  represented by  **Brian C. Rosen−Shaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF STATE**          represented by   **Brian C. Rosen−Shaud**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF**              represented by   **Brian C. Rosen−Shaud**
**TRANSPORTATION**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laurel H. Lum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/06/2022 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ADCDC−9581909) filed by AMERICA FIRST LEGAL FOUNDATION. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Civil Cover Sheet, # 38 Summons, # 39 Summons, # 40 Summons, # 41 Summons, # 42 Summons, # 43 Summons, # 44 Summons, # 45 Summons, # 46 Summons, # 47 Summons, # 48 Summons, # 49 Summons, # 50 Summons)(Ding, Michael) (Entered: 10/06/2022) |
| 10/06/2022 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by AMERICA FIRST LEGAL FOUNDATION (Ding, Michael) (Entered: 10/06/2022) |
| 10/07/2022 |  | Case Assigned to Chief Judge Beryl A. Howell. (zcb, ) (Entered: 10/07/2022) |
| 10/07/2022 | 3 | SUMMONS (13) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zcb, ) (Entered: 10/07/2022) |

| 10/11/2022 | 4 | STANDING ORDER. Signed by Chief Judge Beryl A. Howell on October 11, 2022. (lcbah1) (Entered: 10/11/2022) |
|---|---|---|
| 11/14/2022 | 5 | NOTICE of Appearance by Laurel H. Lum on behalf of All Defendants (Lum, Laurel) (Entered: 11/14/2022) |
| 11/14/2022 | 6 | ANSWER to Complaint by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION.(Lum, Laurel) (Entered: 11/14/2022) |
| 11/18/2022 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF HOMELAND SECURITY served on 10/13/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF ENERGY served on 10/13/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 9 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF THE INTERIOR served on 10/13/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 10/14/2022. (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF LABOR served on 10/13/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 12 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF STATE served on 10/14/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 13 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF TRANSPORTATION served on 10/13/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF EDUCATION served on 10/14/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 15 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES served on 10/17/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 16 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. SMALL BUSINESS ADMINISTRATION served on 10/14/2022 (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 17 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF AGRICULTURE served on 10/13/2022 (Attachments: # 1 |

| | | |
|---|---|---|
| | | Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/18/2022 | 18 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 10/14/2022. Answer due for ALL FEDERAL DEFENDANTS by 11/13/2022. (Attachments: # 1 Supplement)(Ding, Michael) (Entered: 11/18/2022) |
| 11/28/2022 | 19 | Joint MOTION to Consolidate Cases by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Lum, Laurel) (Entered: 11/28/2022) |
| 11/28/2022 | 20 | Joint STATUS REPORT by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Lum, Laurel) (Entered: 11/28/2022) |
| 11/29/2022 | | MINUTE ORDER (paperless) GRANTING the parties' 19 Joint Motion to Consolidate Cases and CONSOLIDATING this case, Civil Case No. 22−3029, with *America First Legal Foundation v. U.S. Dept of Treas.*, Civil Case No. 22−3034, for all purposes. *See* LCvR 40.5 and Fed. R. Civ. P. 42. The parties are directed that all filings in these consolidated cases should be made only in Case No. 22−3029. The Clerk of Court shall close Case No. 22−3034 and transfer whatever parties are not identical to Case No. 22−3029. It is further ORDERED that the parties shall adhere to the following SCHEDULING ORDER:<br><br>(1) By January 11, 2023, defendants shall file their motion for summary judgment;<br><br>(2) By February 8, 2023, Plaintiff shall file any opposition; and<br><br>(3) By February 22, 2023, defendants shall file any reply. Signed by Chief Judge Beryl A. Howell on November 29, 2022. (lcbah1) (Entered: 11/29/2022) |
| 11/30/2022 | | Set/Reset Deadlines: Defendants' motion for summary judgment due by 1/11/2023; plaintiff's opposition due by 2/8/2023; defendants' reply due by 2/22/2023. (ztg) (Entered: 11/30/2022) |
| 01/11/2023 | 21 | MOTION for Summary Judgment by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Exhibit A, SBA Declaration, # 2 Exhibit B, Sauber Declaration, # 3 Exhibit C, USDA Declaration, # 4 Exhibit D, Education Declaration, # 5 Exhibit E, DHS Declaration, # 6 Exhibit F, DOI Declaration, # 7 Exhibit G, DOL Declaration, # 8 Exhibit H, DOT Declaration, # 9 Exhibit I, Treasury Declaration, # 10 Exhibit J, VA Declaration, # 11 Exhibit K, HUD |

| | | |
|---|---|---|
| | | Declaration, # 12 Exhibit L, State Declaration, # 13 Exhibit M, HHS Declaration, # 14 Exhibit N, Energy Declaration, # 15 Exhibit O, EPA Declaration, # 16 Statement of Facts, # 17 Text of Proposed Order)(Lum, Laurel) (Entered: 01/11/2023) |
| 01/19/2023 | 22 | MOTION for Extension of Time to File Response/Reply by AMERICA FIRST LEGAL FOUNDATION. (Ding, Michael) (Entered: 01/19/2023) |
| 01/19/2023 | | MINUTE ORDER (paperless) GRANTING the parties' 22 Joint Motion for Extension of Time and MODIFYING the SCHEDULING ORDER previously entered on November 29, 2022 as follows:<br><br>(1)by March 1, 2023, plaintiff shall file any opposition to defendants' 21 Motion for Summary Judgment; and<br>(2)by March 29, 2023, defendants shall file any reply. Signed by Chief Judge Beryl A. Howell on January 19, 2023. (lcbah1) (Entered: 01/19/2023) |
| 01/20/2023 | | Set/Reset Deadlines: Opposition to 21 Motion for Summary Judgment due by 3/1/2023; reply, if any, due by 3/29/2023. (ztg) (Entered: 01/20/2023) |
| 02/16/2023 | 23 | Unopposed MOTION for Extension of Time to File Response/Reply as to 21 MOTION for Summary Judgment by AMERICA FIRST LEGAL FOUNDATION. (Ding, Michael) (Entered: 02/16/2023) |
| 02/17/2023 | | MINUTE ORDER (paperless) GRANTING the plaintiff's 23 Unopposed Motion for Extension of Time and MODIFYING the SCHEDULING ORDER entered on November 29, 2022 and previously modified on January 19, 2023 as follows:<br><br>(1) by March 22, 2023, plaintiff shall file any opposition to defendants' 21 Motion for Summary Judgment; and<br>(2) by April 19, 2023, defendants shall file any reply. Signed by Chief Judge Beryl A. Howell on February 17, 2023. (lcbah1) (Entered: 02/17/2023) |
| 02/21/2023 | | Set/Reset Deadlines: Plaintiff's opposition to 21 Motion for Summary Judgment due by 3/22/2023; defendants' reply due by 4/19/2023. (ztg) (Entered: 02/21/2023) |
| 03/22/2023 | 24 | NOTICE of Appearance by Reed Darrow Rubinstein on behalf of AMERICA FIRST LEGAL FOUNDATION (Rubinstein, Reed) (Entered: 03/22/2023) |
| 03/22/2023 | 25 | NOTICE of Appearance by Gene Hamilton on behalf of All Plaintiffs (Hamilton, Gene) (Entered: 03/22/2023) |
| 03/22/2023 | 26 | Memorandum in opposition to re 21 Motion for Summary Judgment,,,, filed by AMERICA FIRST LEGAL FOUNDATION. (Attachments: # 1 Statement of Facts, # 2 Text of Proposed Order)(Ding, Michael) (Entered: 03/22/2023) |
| 04/10/2023 | 27 | NOTICE of Appearance by Brian C. Rosen−Shaud on behalf of All Defendants (Rosen−Shaud, Brian) (Entered: 04/10/2023) |
| 04/10/2023 | 28 | Consent MOTION for Extension of Time to File Response/Reply by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Text of Proposed |

| | | |
|---|---|---|
| | | Order)(Rosen−Shaud, Brian) (Entered: 04/10/2023) |
| 04/10/2023 | | MINUTE ORDER (paperless) GRANTING defendants' 28 Consent Motion for Extension of Time and DIRECTING defendants to file any reply in support of their 21 Motion for Summary Judgment by May 5, 2023. Signed by Judge Beryl A. Howell on April 10, 2023. (lcbah1) (Entered: 04/10/2023) |
| 04/11/2023 | | Set/Reset Deadlines: Defendants' reply in support of their 21 Motion for Summary Judgment due by 5/5/2023. (ztg) (Entered: 04/11/2023) |
| 05/01/2023 | 29 | Consent MOTION for Extension of Time to File Response/Reply by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Attachments: # 1 Text of Proposed Order)(Rosen−Shaud, Brian) (Entered: 05/01/2023) |
| 05/02/2023 | | MINUTE ORDER (paperless) GRANTING defendants' 29 Consent Motion for Extension of Time and DIRECTING defendants to file any reply in support of their 21 Motion for Summary Judgment by May 12, 2023. Signed by Judge Beryl A. Howell on May 2, 2023. (lcbah1) (Entered: 05/02/2023) |
| 05/03/2023 | | Set/Reset Deadlines: Defendants' reply in support of 21 Motion for Summary Judgment due by 5/12/2023. (ztg) (Entered: 05/03/2023) |
| 05/12/2023 | 30 | REPLY to opposition to motion re 21 MOTION for Summary Judgment filed by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Rosen−Shaud, Brian) (Entered: 05/12/2023) |
| 06/14/2023 | 31 | MOTION for Leave to File *Sur−Reply* by AMERICA FIRST LEGAL FOUNDATION. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support)(Ding, Michael) (Entered: 06/14/2023) |
| 06/15/2023 | 32 | Memorandum in opposition to re 31 Motion for Leave to File *Sur−Reply* filed by U.S. DEPARTMENT OF AGRICULTURE, U.S. DEPARTMENT OF EDUCATION, U.S. DEPARTMENT OF ENERGY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF LABOR, U.S. DEPARTMENT OF STATE, U.S. DEPARTMENT OF THE INTERIOR, U.S. DEPARTMENT OF TRANSPORTATION, U.S. ENVIRONMENTAL PROTECTION AGENCY, U.S. SMALL BUSINESS ADMINISTRATION. (Rosen−Shaud, Brian) (Entered: 06/15/2023) |
| 06/20/2023 | | MINUTE ORDER (paperless) GRANTING, over defendants' 32 Opposition to Plaintiff's Motion for Leave to File Sur−Reply, plaintiff's 31 Motion for Leave to File Sur−Reply, to allow plaintiff to respond more fully to the arguments raised in |

| | | |
|---|---|---|
| | | defendants' <u>21</u> Motion for Summary Judgment and <u>30</u> Reply in Support of Motion for Summary Judgment, and the fact that the Court has discretion to permit the filing of a sur−reply, regardless of its timing. *See Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014) ("The decision to grant or deny leave to file a sur−reply is committed to the sound discretion of the Court." (citing *American Forest & Paper Ass'n v. EPA*, Case No. 93−cv−694 (RMU), 1996 WL 509601, *3 (D.D.C. Sept. 4, 1996))); *Anand v. U.S. Dep't of Health & Human Servs.*, Case No. 21−cv−1635 (CKK), 2022 WL 18911137, *1 (D.D.C. 2022) ("In exercising its discretion, the court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the nonmovant's proposed sur−reply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted."). Signed by Judge Beryl A. Howell on June 20, 2023. (lcbah1) (Entered: 06/20/2023) |
| 06/21/2023 | <u>33</u> | SURREPLY to re <u>31</u> MOTION for Leave to File *Sur−Reply*, <u>21</u> MOTION for Summary Judgment filed by AMERICA FIRST LEGAL FOUNDATION. (Ding, Michael) (Entered: 06/21/2023) |
| 07/18/2023 | <u>34</u> | ORDER GRANTING the defendants' <u>21</u> Motion for Summary Judgment. See Order for further details. The Clerk of the Court is directed to close this case. Signed by Judge Beryl A. Howell on July 18, 2023. (lcbah1) (Entered: 07/18/2023) |
| 07/18/2023 | <u>35</u> | MEMORANDUM OPINION regarding the defendants' <u>21</u> Motion for Summary Judgment. Signed by Judge Beryl A. Howell on July 18, 2023. (lcbah1) (Entered: 07/18/2023) |
| 07/28/2023 | <u>36</u> | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>35</u> Memorandum & Opinion, <u>34</u> Order on Motion for Summary Judgment by AMERICA FIRST LEGAL FOUNDATION. Filing fee $ 505, receipt number ADCDC−10238640. Fee Status: Fee Paid. Parties have been notified. (Ding, Michael) (Entered: 07/28/2023) |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,

        Plaintiff,

        v.

U.S. DEPARTMENT OF AGRICULTURE, *et al.*,

        Defendants.

Civil Action No.: 22-3029 (BAH)

## NOTICE OF APPEAL

Please take notice that the plaintiff America First Legal Foundation hereby appeals, to the United States Court of Appeals for the District of Columbia, this Court's Order and Opinion of July 18, 2023. See ECF Nos. 34 and 35.

Dated:  July 28, 2023           Respectfully submitted,

        /s/ *Michael Ding*
        Gene P. Hamilton (D.C. Bar No. 1619548)
        Reed D. Rubinstein (D.C. Bar No. 400153)
        Michael Ding (D.C. Bar No. 1027252)
        AMERICA FIRST LEGAL FOUNDATION
        611 Pennsylvania Ave SE #231
        Washington, DC 20003
        (202) 964-3721
        Gene.Hamilton@aflegal.org
        Reed.Rubinstein@aflegal.org
        Michael.Ding@aflegal.org
        *Counsel for America First Legal Foundation*

**Certificate of Service**

I certify that I have served this Notice of Appeal on all counsel of record through the court's ECF system this 28th day of July, 2023.


/s/ *Michael Ding*
Counsel for America First Legal Foundation

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION, Plaintiff, | Civil Action No. 22-3029 (BAH) |
| v. | Judge Beryl A. Howell |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.* Defendants. |  |

## <u>ORDER</u>

Upon consideration of defendant agencies' Motion for Summary Judgment, ECF No. 21, the related legal memoranda in support and in opposition, the exhibits and declarations attached thereto, and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendants' Motion for Summary Judgment, ECF No. 21, is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case

**SO ORDERED.**

Date: July 18, 2023

*This is a final and appealable order.*

**BERYL A. HOWELL**
United States District Court Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION,

              Plaintiff,

        v.

U.S. DEPARTMENT OF AGRICULTURE,
*et al.*

              Defendants.

Civil Action No. 22-3029 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff, America First Legal Foundation, challenges the response of defendants, fourteen federal agencies, to its June 10, 2022 requests submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the strategic plans each had prepared in response to an Executive Order regarding promoting access to voting. *See generally* Compl., ECF No. 1. The Executive Order instructed each agency to prepare such a plan evaluating ways in which the agency could promote voter registration and participation, and to submit the plan to the White House for consideration. Upon receiving plaintiff's FOIA requests, defendant agencies concluded that the strategic plans were exempt from disclosure under FOIA Exemption 5, as they were covered by the presidential communications privilege. Defendants have now moved for summary judgment. Defs.' Mot. Summ. J., ECF No. 21. For the reasons set forth below, defendants' motion is granted.

## I.       BACKGROUND

Pertinent background underlying plaintiff's FOIA requests is briefly described, followed by review of the requests and each federal agency defendant's response thereto, both before and after initiation of this lawsuit.

1

### A. President Biden's Executive Order 14019

In early 2021, President Biden issued Executive Order 14019, Exec. Order No. 14,019, *Promoting Access to Voting*, 86 Fed. Reg. 13623 (Mar. 7, 2021) ("EO 14019"). The Order tasked federal agencies with "consider[ing] ways to expand citizens' opportunities to register to vote and to obtain information about, and participate in, the electoral process." *Id.* at 13623. To that end, the head of each federal agency was to "evaluate ways in which the agency can, as appropriate and consistent with applicable law, promote voter registration and voter participation." *Id.* Specifically, each agency was asked to consider ways that it can "provide relevant information . . . about how to register to vote, how to request a vote-by-mail ballot, and how to cast a ballot in upcoming elections," "facilitate seamless transition from agencies' websites directly to State online voter registration systems or appropriate Federal websites," "provide access to voter registration services and vote-by-mail ballot application," "promote and expand access to multilingual voter registration and election information," and "promote equal participation in the electoral process for all eligible citizens of all backgrounds." *Id.* at 13623–24. The Order required each agency to submit to the Assistant to the President for Domestic Policy, within 200 days of the Order's issuance, "a strategic plan outlining the ways identified . . . that the agency can promote voter registration and voter participation." *Id.* at 13624.

As instructed by EO 14019, the fourteen agencies named as defendants in this case—namely, the U.S. Department of Agriculture ("USDA"), U.S. Department of Education ("ED"), U.S. Department of Energy ("DOE"), U.S. Environmental Protection Agency ("EPA"), U.S. Department of Health and Human Services ("HHS"), U.S. Department of Homeland Security ("DHS"), U.S. Department of the Interior ("DOI"), U.S. Department of Labor ("DOL"), U.S.

Small Business Administration ("SBA"), U.S. Department of State ("DOS"), U.S. Department of

Transportation ("DOT"), U.S. Department of the Treasury ("Treasury"), U.S. Department of

Veterans Affairs ("VA"), and U.S. Department of Housing and Urban Development ("HUD")

(collectively, "defendants")—submitted the requested strategic plans to the Assistant to the

President for Domestic Policy and head of the Domestic Policy Council ("DPC") within the

White House, Ambassador Susan Rice.  Defs.' Mot., Ex. B, Decl. of White House Special

Counsel Richard A. Sauber ("Sauber Decl.") ¶¶ 7, 12, ECF No. 21-2.  The strategic plans were

initially reviewed by Ambassador Rice's staff members, who then compiled information for

Ambassador Rice's and senior White House advisors' use in creating briefing materials and

formulating advice for the President.  *Id.* ¶ 12.

### B.  Plaintiff's FOIA Requests

On June 10, 2022, plaintiff submitted the at-issue FOIA requests to each defendant.

Defs.' Statement of Material Facts Not in Dispute ("Defs.' SMF") ¶ 2, ECF No. 21-16.  The

requests sought production of each agency's strategic plan as submitted to the White House

pursuant to EO 14019.  *Id.*  Defendants Treasury, VA, and HUD gave initial responses to the

requests by informing plaintiff that responsive documents were located but were withheld in full

under FOIA Exemption 5.  Defs.' SMF ¶ 3; *see also* Defs.' Mot., Ex. I, Decl. of Ryan Law

("Ryan Law Decl.") ¶ 5, ECF No. 21-9; *id.*, Ex. J, Decl. of Lyndon B. Johnson ("Johnson Decl.")

¶ 13, ECF No. 21-10; *id.*, Ex. K, Decl. of Benjamin B. Klubes ("Klubes Decl.") ¶ 6, ECF No. 21-

11.  Plaintiff administratively appealed all three agencies' initial decisions.  Ryan Law Decl. ¶ 5;

Johnson Decl., ¶ 14; Klubes Decl. ¶ 7.  In September and October, 2022, Treasury, VA, and

HUD issued final agency decisions informing plaintiff that these agencies, too, would withhold

the responsive documents under Exemption 5.  Ryan Law Decl. ¶ 5; Johnson Decl., ¶ 15; Klubes

Decl. ¶ 9.

Defendant SBA initially responded to plaintiff's request on June 24, 2022, Defs.' SMF

¶ 4; *see also* Defs.' Mot., Ex. A, Decl. of Eric S. Benderson ("Benderson Decl.") ¶ 5, ECF No.

21-1, after interpreting the request as seeking an "approved" strategic plan representing actions

the agency had "decided to implement" but, given that no such plan existed, SBA informed

plaintiff that responsive document was located.  Benderson Decl. ¶ 5.  Plaintiff then filed an

administrative appeal and, on December 20, 2022, SBA corrected its response by informing

plaintiff that a responsive document had been located, but, like other agencies, SBA was

withholding it under Exemption 5.  Defs.' SMF ¶ 4; *see also* Benderson Decl. ¶¶ 7, 12.

By the time plaintiff initiated the instant suit, the remaining defendants, USDA, ED,

DOE, EPA, HHS, DHS, DOI, DOL, DOS, and DOT, had not yet provided a substantive response

to the requests.  Defs.' SMF ¶ 5.

### C. Procedural History and Withholdings of Requested Records

On October 6, 2022, plaintiff initiated the instant litigation, challenging defendants'

responses, or lack thereof, to the FOIA requests at issue.  Defs.' SMF ¶ 6; *see also* Compl., ECF

No. 1; Compl., *Am. First Legal Found. v. U.S. Dep't of Treasury*, No. 22-cv-3034 (BAH)

(D.D.C. 2022), ECF No. 1 ("*Treasury* Compl.").  Plaintiff initially brought those challenges in

two separate suits.  The first targeted those defendants who had responded by withholding the

responsive document, namely Treasury, VA, and HUD.  Defs.' SMF ¶ 7; *see also Treasury*

Compl. ¶¶ 10–11, 13.  The second—the instant case—named defendant SBA, which had initially

indicated it could not locate any responsive document, and the remaining defendant agencies that

had not responded to plaintiff's requests.  Defs.' SMF ¶ 7; *see also* Compl. ¶¶ 12–13.

4

After defendants filed answers to both complaints, defendants' counsel informed plaintiff's counsel that the remaining defendants had searched for and located each agency's requested strategic plan, which was being withheld by each agency in full under FOIA Exemption 5.  Defs.' SMF ¶ 7; *see also* Joint Mot. to Consolidate Cases at 2, ECF No. 19. Specifically, all defendants withheld the responsive document based on Exemption 5's presidential communications privilege.  Benderson Decl. ¶¶ 13, 15; Defs.' Mot., Ex. C, Decl. of Alexis R. Graves ("Graves Decl.") ¶¶ 8, 16, ECF No. 21-3; *id.*, Ex. D, Decl. of Catherine McConnell ("McConnell Decl.") ¶ 11, ECF No. 21-4; *id.*, Ex. E, Decl. of Rosemary Law ("Rosemary Law Decl.") ¶ 12, ECF No. 21-5; *id.*, Ex. F, Decl. of Leah Fairman ("Fairman Decl.") ¶ 10, ECF No. 21-6; *id.*, Ex. G, Decl. of Katherine Swain-Smith ("Swain-Smith Decl.") ¶¶ 10–11, ECF No. 21-7; *id.*, Ex. H, Decl. of Vincent White ("White Decl.") ¶ 9, ECF No. 21-8; Ryan Law Decl. ¶¶ 6, 11; Johnson Decl. ¶¶ 15, 17; Klubes Decl. ¶¶ 16, 18–19; Defs.' Mot., Ex. L, Decl. of Susan C. Weetman ¶ 18, ECF No. 21-12; *id.*, Ex. M, Decl. of Alesia Y. Williams ¶ 20, ECF No. 21-13; *id.*, Ex. N, Decl. of Susan Beard ¶¶ 11, 13, ECF No. 21-14; *id.*, Ex. O, Decl. of Victoria Arroyo ¶ 15, ECF No. 21-15.  Some defendants provided additional justification for withholdings based on Exemption 5's deliberative process privilege.  Benderson Decl. ¶¶ 13, 17–25; Graves Decl. ¶¶ 8, 18–21; McConnell Decl. ¶¶ 12–15; Rosemary Law Decl. ¶¶ 15–19; Fairman Decl. ¶¶ 12–19; Swain-Smith Decl. ¶¶ 12–21; White Decl. ¶¶ 11–13; Ryan Law Decl. ¶¶ 6, 13–21; Johnson Decl. ¶¶ 15, 18–22; Klubes Decl. ¶¶ 16, 20–26.

Given now entirely overlapping factual circumstances and legal issues, the two lawsuits were consolidated upon the parties' joint motion.  Joint Mot. to Consolidate Cases at 1–2; Min. Order (Nov. 29, 2022).  Defendants have now moved for summary judgment, Defs.' Mot., which

motion is ripe for resolution, *see* Defs.' Reply Supp. Defs.' Mot. Summ. J. ("Defs.' Reply"),

ECF No. 30; Pl.'s Mem. Supp. Pl.'s Sur-Reply ("Pl.'s Sur-Reply"), ECF No. 33.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment

only if there is no genuine issue of material fact and judgment in the movant's favor is proper as

a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir.

2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805

(D.C. Cir. 2006)); *see also* FED. R. CIV. P. 56(a).  "In FOIA cases, 'summary judgment may be

granted on the basis of agency affidavits if they contain reasonable specificity of detail rather

than merely conclusory statements, and if they are not called into question by contradictory

evidence in the record or by evidence of agency bad faith.'" *Aguiar v. Drug Enf't Admin.*, 865

F.3d 730, 734–35 (D.C. Cir. 2017) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d

208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828,

833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in

dispute and if it demonstrates 'that each document that falls within the class requested either has

been produced . . . or is wholly exempt from the Act's inspection requirements.'" (omission in

original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))).  Most FOIA cases "can

be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521,

527 (D.C. Cir. 2011).

"The fundamental principle animating FOIA is public access to government documents."

*Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *Valencia-

Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)) *accord DiBacco v. U.S. Army*

("*DiBacco I*"), 795 F.3d 178, 183 (D.C. Cir. 2015).  Agencies are therefore statutorily mandated

to "make . . . records promptly available to any person" who submits a request that "reasonably describes such records" and "is made in accordance with [the agency's] published rules."  5 U.S.C. § 552(a)(3)(A).  "Congress, however, did not 'pursue transparency at all costs[;]' [r]ather, it recognized that 'legitimate governmental and private interests could be harmed by release of certain types of information.'"  *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.* ("*CREW II*"), 45 F.4th 963, 967 (D.C. Cir. 2022) (first quoting *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020); and then quoting *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017)).  To balance those competing interests, "FOIA exempts nine categories of documents from 'the government's otherwise broad duty of disclosure.'"  *Waterman*, 61 F.4th at 156 (quoting *AquAlliance*, 856 F.3d at 103). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  When an agency invokes an exemption to disclosure, district courts must "determine *de novo* whether non-disclosure was permissible."  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015).  The statute "places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records."  *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)); *see also U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 171 (1993) ("The Government bears the burden of establishing that the exemption applies."); *DiBacco v. U.S. Dep't of Army* ("*DiBacco II*"), 926

F.3d 827, 834 (D.C. Cir. 2019) ("'An agency withholding responsive documents from a FOIA

release bears the burden of proving the applicability of claimed exemptions,' typically through

affidavit or declaration." (quoting *DiBacco I*, 795 F.3d at 195)).

    The agency may sustain "this burden 'by submitting a *Vaughn* index, along with

affidavits from agency employees that describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith.'" *Waterman*, 61 F.4th at 158 (quoting *Am. Immigr. Laws. Ass'n v.*

*Exec. Off. Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016)); *see also Poitras v. Dep't of*

*Homeland Sec.*, 303 F. Supp. 3d 136, 150 (D.D.C. 2018) ("An agency may carry its burden of

showing an exemption was properly invoked by submitting sufficiently detailed affidavits or

declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the

government has analyzed carefully any material withheld and provided sufficient information as

to the applicability of an exemption to enable the adversary system to operate."). "'Ultimately,

an agency's justification for invoking a FOIA exemption is sufficient if it appears "logical" or

"plausible."'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per

curiam) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III.    DISCUSSION

    FOIA Exemption 5, the only exemption at issue in this case, protects from disclosure

"inter-agency or intra-agency memorandums or letters that would not be available by law to a

party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Two conditions

must be met for a record to qualify for this exemption: (1) "its source must be a Government

agency;" and (2) "it must fall within the ambit of a privilege against discovery under judicial

standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Nat'l Inst. of Military Justice v. U.S. Dep't of Def.* ("*NIMJ*"), 512 F.3d 677, 682 (D.C. Cir. 2008); *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008).  The second condition "incorporate[s] privileges . . . recognized as components of executive privilege, including the deliberative process privilege and presidential communications privilege." *Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 885 (D.C. Cir. 2021); *see also Judicial Watch*, 913 F.3d at 1109; *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). Here, the parties only dispute whether the second condition for invocation of Exemption 5 is satisfied, as required to justify the agencies' withholding their strategic plans.

The strategic plans at issue in this case contain both existing agency actions and pre-decisional and deliberative policies or ideas.  *See* Defs.' Mem. P. & A. Supp. Mot. Summ. J. ("Defs.' Mem.") at 11–13, ECF No. 21; Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 4–5, ECF No. 26.  All defendants invoke Exemption 5 based on the applicability of the presidential communications privilege, which is "a presumptive privilege for Presidential communications." *Protect Democracy Project*, 10 F.4th at 885 (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)); *see* Defs.' Mem. at 6–10.  Defendants contend that the strategic plans "fall squarely within the scope of the presidential communications privilege," because they were solicited by the President through EO 14019 and received by immediate White House advisors and their staff members, namely Ambassador Susan Rice and her staff, for briefing and formulating advice to the President regarding voting rights issues.  *See* Defs.' Mem. at 6–8.  Relying on both the text of EO 14019 and the White House Special Counsel's declaration, defendants emphasize that President Biden expressly requested the at-issue strategic plans as part of his direct presidential

decision-making on his administration's strategy on voting access.  *See* Defs.' Reply at 1–3.

Defendants argue more broadly that, as a clear and consistent legal principle followed by the

D.C. Circuit, the presidential communications privilege applies to entire documents, including

factual portions.  *See* Defs.' Mem. at 6–7; Defs.' Reply at 3–5.  Thus, they contend that the

strategic plans are privileged in their entirety and warrant no segregability analysis.  *See* Defs.'

Mem. at 6–7; Defs.' Reply at 3–5.  Disclosure of the strategic plans, defendants suggest, would

lead to specific foreseeable harm by undermining the quality of presidential decision-making and

causing public confusion about the President's policies and positions on voting rights issues.  *See*

Defs.' Mem. at 14–16.

      Several defendants, namely SBA, USDA, ED, DHS, DOI, DOL, DOT, Treasury, VA,

and HUD, also invoke the deliberative process privilege to justify additional, overlapping

withholdings of portions of their strategic plans representing policies that have not been

implemented or ideas that have been decided against.  *See id.* at 10–14.  These defendants argue

that disclosure of pre-decisional and deliberative portions of the strategic plans would cause

foreseeable harm in terms of public confusion about the agencies' policies and chilling effects on

the agencies' candid correspondence with the White House.  *See id.* at 14–15.

      Plaintiff, on the other hand, primarily focuses on final, post-decisional portions of the

strategic plans and argues that they do not call for further direct presidential decision-making and

therefore cannot be shielded by the presidential communications privilege.  *See* Pl.'s Opp'n at

12–14.  Plaintiff draws a distinction between section 3 of EO 14019, which requested the

strategic plans, and section 6, which separately sought presidential "recommendations" on

expanding voting access for federal employees.  *See* Pl.'s Sur-Reply at 1–4.  Based on this

purported textual distinction, plaintiff contends that the strategic plans were requested as reports

of agency plans and actions, not as recommendations as part of an ongoing presidential decision-making process. *See id.*  Plaintiff also argues that the strategic plans have not been used in actual communications with the President and thus fall outside the scope of the presidential communications privilege. *See id.* at 4–5.

Plaintiff does not address defendants' additional, overlapping withholdings based on the deliberative process privilege. *See generally* Pl.'s Opp'n; Pl.'s Sur-Reply.  Instead, plaintiff focuses on attacking application of the presidential communications privilege to entire documents, particularly the final, post-decisional portions, and effectively calls for a segregability analysis. *See* Pl.'s Opp'n at 12–17.  Plaintiff concedes that the D.C. Circuit has taken an entire-document approach to applying the presidential communications privilege but contends that the approach is "dicta" and yields to the "key limiting principle" that the privilege can solely protect confidential presidential decision-making processes. *See id.* at 15–17.  The entire-document rule should not be applied in this case, plaintiff argues, because that would result in shielding final agency policies and actions from public scrutiny, which is tantamount to "undermin[ing] FOIA" and "creat[ing] secret law." *See id.*  Plaintiff further contends that defendants fail to demonstrate the specific foreseeable harm arising from disclosure of completed agency actions, having only relied on "generic" and "boilerplate" statements from a single affidavit from the White House Special Counsel. *See id.* at 18–21.

Defendants have the better arguments under binding precedent, for the reasons explained below.

### A.  PRESIDENTIAL COMMUNICATIONS PRIVILEGE APPLIES TO THE STRATEGIC PLANS IN FULL

The presidential communications privilege "applies to 'documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should

11

remain confidential.'" *Protect Democracy Project*, 10 F.4th at 885 (quoting *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997)).  This species of executive privilege thus "protects 'communications directly involving and documents actually viewed by the President,' as well as documents 'solicited and received' by the President or his 'immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given the President.'" *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (alteration and omission in original) (quoting *Judicial Watch, Inc. v. Dep't. of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004)).  The presidential communications privilege is broader than the deliberative process privilege and encompasses final or post-decisional portions as well as deliberative or advice portions of documents.  *In re Sealed Case*, 121 F.3d at 745 (citing *Nixon*, 418 U.S. at 709).  As the D.C. Circuit has explained, the former privilege "covers documents reflecting 'presidential decisionmaking and deliberations,' regardless of whether the documents are predecisional or not, and it covers the documents in their entirety." *Loving*, 550 F.3d at 37–38 (quoting *In re Sealed Case*, 121 F.3d at 744–45); *accord Protect Democracy Project*, 10 F.4th at 885–86.  Given that the presidential communications privilege affords greater protection against disclosure than the deliberative process privilege, a court need only address the latter if the withheld document is determined not to find protection under the former.  *In re Sealed Case*, 121 F.3d at 746.

The purpose of the presidential communications privilege is to "preserve[ ] the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving*, 550 F.3d at 37.  As such, the privilege protects "the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber," *In re Sealed Case*, 121 F.3d at 750, so that the President may "effectively and faithfully carry out his Article

12

II duties and 'to protect the effectiveness of the executive decision-making process,'" *Judicial Watch*, 365 F.3d at 1115 (quoting *In re Sealed Case*, 121 F.3d at 742) (internal quotation marks omitted).  The privilege is "'fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution' because it 'relates to the effective discharge of a President's powers.'"  *Judicial Watch*, 913 F.3d at 1110 (quoting *Nixon*, 418 U.S. at 708, 711); *see also In re Sealed Case*, 121 F.3d at 745 (describing the presidential communications privilege as "rooted in constitutional separation of powers principles and the President's unique constitutional role.").

      1.   *Presidential Communications Privilege Protects the Strategic Plans Because They Were Solicited by President Biden and Received by His Immediate White House Advisors to Formulate Advice for Direct Presidential Decision-Making on Voting Rights Issues*

The presidential communications privilege applies in this case because the strategic plans were solicited by President Biden through EO 14019 and received by his immediate White House advisors for use in briefing and advising him on voting rights issues.  As part of the "policy of [his] Administration to promote and defend the right to vote," the President tasked the agencies with "outlining the ways identified under [the required] review that [they] can promote voter registration and voter participation."  EO 14019 at 13623, 13624.  The Order included specific instructions for each agency to submit "a strategic plan" to the Assistant to the President for Domestic Policy.  *Id.* at 13624.  Pursuant to the Order, the at-issue strategic plans were submitted to Ambassador Rice, who was and remains the Assistant to the President for Domestic Policy as well as head of the DPC, which "drives the formulation and implementation of the President's domestic policy agenda, including advice on voting rights matters."  Sauber Decl. ¶ 7.  Ambassador Rice's staff members compiled information from the strategic plans, and senior White House advisors relied on the information to brief the President on agency actions and

proposals and to advise the President on further executive decision-making regarding voting

matters.  *Id.* ¶ 12.  Thus, the strategic plans were "solicited" by the President and "received" by

his "immediate White House advisers [with] . . . broad and significant responsibility for

investigating and formulating the advice to be given the President," falling squarely within the

protective scope of the presidential communications privilege.  *Loving*, 550 F.3d at 37 (alteration

in original) (quoting *Judicial Watch*, 365 F.3d at 1114).

Plaintiff counters that "[t]he President had already made his decisions [regarding voting

rights issues], publicly announced them, and directed the agencies to act," making the strategic

plans merely "reports on final [agency] actions" that had nothing further to do with confidential

presidential decision-making.  Pl.'s Opp'n at 12.  Plaintiff supports this argument by noting the

absence of the word "recommendations" or other advice-related language in section 3 of EO

14019's request for submission of strategic plans.  Pl.'s Sur-Reply at 1–4.  Analogizing to the

Supreme Court's directives regarding the interpretation of agency regulations, plaintiff then

argues that no deference should be given to the White House Special Counsel's affidavit

explaining the meaning of section 3 where the executive order's language is "unambiguous" in

not soliciting advice or recommendations.  *Id.*

In reality, however, section 3 of EO 14019 is not plainly "unambiguous," and plaintiff's

reading that this provision constitutes a final presidential directive for agencies to act and report

back only on already completed actions is not an obvious one.  Section 2 of EO 14019 suggests

that the President made all solicitations and requests under the executive order as part of "the

policy of [his] Administration to promote and defend the right to vote."  EO 14019 at 13623.

Consistent with this language, the Special Counsel's affidavit suggests that "[t]he White House

solicited the strategic plans in order to inform future policy developments on voting access."

Sauber Decl. ¶ 11.  As defendants rightfully note, within this context of on-going executive

policymaking, section 3 is more reasonably read as tasking agencies to brainstorm and identify

ways that they "*can* promote voter registration and voter participation" with future possible

actions, not merely to report on actions already taken.  EO 14019 at 13624 (emphasis added).

Indeed, upon making the request for submission, the White House also provided agencies with a

template for developing their strategic plans.  Sauber Decl. ¶ 8.  Tellingly, the template included

disclaimers that "[l]isting an action in this strategic plan does <u>not</u> commit your agency to

implementing the action" and that "most agencies will pursue additional actions not listed in this

plan." *Id.* (alteration and emphasis in original).  No part of section 3 or the affidavit suggests

that the President was requesting "[a] catalog of final agency policies and actions."  Pl.'s Opp'n

at 12.  Instead, the record consistently indicates that the President had asked agencies to submit a

subset of potential actions and ideas that may inform the policy developments of his

administration.  Thus, the strategic plans, even if some of them describe existing agency actions,

are not "information regarding governmental operations that do not call ultimately for direct

decisionmaking by the President."  *In re Sealed Case*, 121 F.3d at 752.  Protecting the strategic

plans under the presidential communications privilege does not create an "endless feedback

loop" shrouding agency actions as plaintiff warns, *see* Pl.'s Opp'n at 13, because the protective

scope remains limited to information directly relevant for presidential decision-making.

     Plaintiff further contends that defendants cannot extend the presidential communications

privilege to cover strategic plans that "might hypothetically be used in 'potential future decisions

on voting rights issues.'"  Pl.'s Sur-Reply at 4 (emphasis omitted) (quoting Defs.' Reply at 2).

As support for this contention, plaintiff attempts to distinguish this case from *Loving* and

*Judicial Watch* (D.C. Cir. 2004), both upholding applications of the privilege, by asserting that

15

the strategic plans were never used in actual communications with the President.  *Id.* at 4–5.
Once again, this is inaccurate.  The Special Counsel's affidavit states in past tense that "senior
White House advisors relied on the strategic plans in formulating advice . . . [that] informed the
President on the extent of agency actions and proposals on relevant voting matters and on areas
where further Executive Branch action might be needed or considered within the scope of the
President's executive authority."  Sauber Decl. ¶ 12.  The President expressly solicited the
strategic plans through his executive order and then communicated with his immediate advisors
about information compiled from the strategic plans.  As the D.C. Circuit held in *Loving*, the
strategic plans are privileged because "the President solicited and received [them] in a manner
sufficient to bring [them] within the presidential communications privilege," and they "d[id] not
lose [their] privileged status simply because [they] traveled up the chain of command before the
President received [them]."  550 F.3d at 40.

The strategic plans thus fall squarely into the ambit of the presidential communications
privilege, and plaintiff cannot avoid this conclusion by mischaracterizing the text of EO 14019
and the ongoing nature of the President's decision-making process regarding voting rights issues.

 2. *Presidential Communications Privilege Protects the Strategic Plans in Their
    Entirety*

Plaintiff next contends that even if applicable, the presidential communications privilege
should not shield the strategic plans in their entirety, but that position runs contrary to the proper
application of the privilege as covering entire documents.  The entire-document rule for applying
the presidential communications privilege is not "dicta," as plaintiff characterizes it, but
"precedent" consistently applied by the D.C. Circuit and courts in this district.  *Protect
Democracy Project*, 10 F.4th at 887 ("[U]nder existing precedent, the presidential
communications privilege applies to documents in their entirety." (internal quotation omitted));

*see also, e.g.*, *In re Sealed Case*, 121 F.3d at 744–45 (holding that "unlike the deliberative

process privilege, the presidential communications privilege applies to documents in their

entirety, and covers final and post-decisional materials as well as pre-deliberative ones"); *Loving*,

550 F.3d at 37–38 (holding that the presidential communications privilege "covers [] documents

in their entirety," "regardless of whether the documents are predecisional or not"); *Judicial*

*Watch*, 913 F.3d at 1111 (holding that "[o]nce the [presidential communications] privilege

applies, the entirety of the document is protected"); *Ctr. for Effective Gov't v. U.S. Dep't of*

*State*, 7 F. Supp. 3d 16, 22 (D.D.C. 2013) (acknowledging the entire-document principle);

*Buzzfeed, Inc. v. FBI*, 613 F. Supp. 3d 453, 466–67 (D.D.C. 2020) (applying the entire-document

principle); *Cause of Action Inst. v. U.S. Dep't of Com.*, No. 19-cv-2698 (DLF), 2022 WL

4130813, at *5 (D.D.C. Sept. 12, 2022) (same).  The D.C. Circuit has emphasized that because

the presidential communications privilege must ensure the President's "full access to facts," the

privilege must protect factual information "revelatory of the President's deliberations," including

reports regarding implementation of a particular course of action that the President has decided

to pursue.  *In re Sealed Case*, 121 F.3d at 745–46.

Plaintiff argues that the entire-document principle is "not an iron rule," and that portions

of the strategic plans stating final or completed agency actions are unrelated to direct presidential

decision-making and thus segregable from the rest of the strategic plans.  Pl.'s Opp'n at 15–17.

This argument is untenable, for it mischaracterizes the entire-document rule as well as the

strategic plans' role in the President's decision-making process.  As explained *supra*, both EO

14019 and the White House Special Counsel's affidavit show that the President solicited the

strategic plans and received their information as an integral part of his direct presidential

policymaking on voting rights issues.  *See supra* Part III.A.1.  Furthermore, as defendants

17

rightfully note, plaintiff has not identified a single case where a segregability analysis is applied

to materials otherwise directly related to confidential presidential decision-making.  Defs.' Reply

at 4–5; *see generally* Pl.'s Opp'n; Pl.'s Sur-Reply.  This is unsurprising, for the D.C. Circuit has

squarely rejected similar attempts to apply segregability analysis to documents protected by the

presidential communications privilege.  *See Protect Democracy Project*, 10 F.4th at 888

(explaining that "FOIA's segregability requirement presumes that some part of a document is not

exempt," and therefore cannot apply as the presidential communications privilege, by its nature,

covers an entire document).  Thus, the strategic plans, including portions stating existing agency

actions, are protected by the presidential communications privilege in their entirety.[1]

### B.  FORESEEABLE HARM

Plaintiff next contends that, even if the at-issue strategic plans are exempt from

disclosure, defendants have not met their burden to show that disclosure "will foreseeabl[y] harm

the interests protected by the presidential communications privilege."  Pl.'s Opp'n at 18.  The

FOIA Improvement Act provides that "[a]n agency shall withhold information . . . only if the

agency reasonably foresees that disclosure would harm an interest protected by" one of the nine

FOIA exemptions.  5 U.S.C. § 552(a)(8)(A).  This provision requires agencies withholding

information under an exemption to show not only that a withheld record "falls within a FOIA

exemption," but also that "the agency 'reasonably foresees that disclosure would harm an interest

protected by [the] exemption.'"  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370

(D.C. Cir. 2020) (alteration in original) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

---

[1]      Accordingly, defendants' additional argument for partial, overlapping withholdings of the strategic plans based on the deliberative process privilege need not be addressed.  *See In re Sealed Case*, 121 F.3d at 746 (concluding that deliberative process argument did not need to be addressed after finding full coverage of the at-issue document under the presidential communications privilege); *see also Cause of Action Inst. v. U.S. Dep't of Com.*, 513 F. Supp. 3d 116, 130 n.3 (D.D.C. 2021) (same); *Cause of Action Inst.*, 2022 WL 4130813, at *9 n.6 (same).

An agency successfully makes this second, "heightened" showing, *Judicial Watch, Inc. v. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019), by "'identify[ing] specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[ing] the harms in [a] meaningful way to the information withheld,'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (third alteration in original) (quoting *Judicial Watch, Inc. v. Dep't of Justice*, No. 17-cv-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019)); *see also* H.R. Rep. No. 114-391, at 9 (2016) ("An inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld.").  Agencies therefore "must provide more than 'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm.'"  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *Judicial Watch*, 2019 WL 4644029, at *4–5).

Of course, the agency's burden to demonstrate that harm would result from disclosure may shift depending on the nature of the interests protected by the specific exemption with respect to which a claim of foreseeable harm is made.  *See, e.g.*, *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020) ("The degree of detail necessary to substantiate a claim of foreseeable harm is context-specific."); S. Rep. No. 114-4, at 328 (2015) (anticipating that foreseeable harm determinations would turn on "whether the agency reasonably foresees that disclosing that particular document, given its age, content, and character, would harm an interest protected by the applicable exemption").  The purpose of the attorney-client privilege encompassed by Exemption 5, for example, is to provide an "assurance of confidentiality" to

19

clients, *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 130

(D.D.C. 2019) (internal quotation marks and citation omitted), such that disclosure of privileged

information is a harm in and of itself.  When invoking the attorney-client privilege, then, an

agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm.

By contrast, foreseeable harm under the deliberative process privilege requires the withholding

agency to show more.  The agency "cannot simply rely on generalized assertions that disclosure

could chill deliberations."  *Machado Amadis*, 971 F.3d at 371 (internal quotation marks omitted).

Rather, the agency must "provide 'context or insight into the specific decision-making processes

or deliberations at issue, and how they in particular would be harmed by disclosure.'"  *Ctr. for

Investigative Reporting*, 436 F. Supp. 3d at 107 (*Judicial Watch*, 2019 WL 4644029, at *5).

    While the D.C. Circuit has yet to consider the adequacy of an agency's foreseeable harm

showing under the presidential communications privilege, Judges on this Court have consistently

credited declarations describing the potential chilling effects on confidential and candid

presidential decision-making as sufficient identification of foreseeable harm.  *See Wash. Post

Co. v. Special Inspector Gen. for Afg. Reconstruction*, No. 18-cv-2622 (ABJ), 2021 WL

4502106, at *23 (D.D.C. Sept. 20, 2021) (citing *Leopold v. U.S. Dep't of Justice*, 487 F. Supp.

3d 1, 10 n.4 (D.D.C. 2020)).  In *Washington Post*, an agency's declaration that disclosure of the

at-issue information "burdens the ability of the President and his advisors to engage in a

confidential and frank decision-making process and chills or inhibits their ability to have candid

discussions" was found to be an adequate showing of foreseeable harm under the presidential

communications privilege.  *Id.*  In *Leopold*, an agency's representations that disclosure of the at-

issue information "would jeopardize the ability of future Presidents-elect to have full and candid

discussions with their advisers" and "would undermine the ability to protect the

20

confidentiality . . . and further damage the quality of presidential decision-making" were likewise sufficient for establishing foreseeable harm. *Leopold*, 487 F. Supp. 3d at 10 n.4.

In this case, the agencies have made similarly adequate showings of foreseeable harm. The White House Special Counsel's affidavit clearly states that "release of the plans would impose a chilling effect on presidential decisionmaking, as such disclosure would hinder the ability of the President and senior presidential advisors to obtain frank, unfettered information and advice from Defendants and other Executive Branch agencies on important policy issues such as voting access." Sauber Decl. ¶ 14. This statement of foreseeable harm is similar in content and level of detail to representations of harm made by agencies in *Washington Post* and *Leopold*. Plaintiff presents no persuasive reasons why this case should come out differently. Here, as in those previous cases, the description provided in the affidavit of the "chilling effect on presidential decisionmaking," *see* Sauber Decl. ¶ 14, is more than "generic" or "boilerplate," *see Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106; Pl. Opp'n at 19, and thus sufficient to support the presidential communications privilege. *See Wash. Post Co.*, 2021 WL 4502106, at *23; *Leopold*, 487 F. Supp. 3d at 10 n.4; Pl. Opp'n at 19.

Finally, plaintiff argues that, at least concerning portions of the strategic plans describing existing agency actions, defendants have identified no cognizable harm because final and post-decisional information "could [not] possibly have any impact on confidential presidential decisionmaking." Pl. Opp'n at 20. Again, this is inaccurate. As explained *supra*, the strategic plans were solicited by the President to inform his administration's policymaking on expanding voting access and directly relevant for the presidential decision-making process. *See supra* Part III.A.1. Factual portions of the strategic plans are thus "revelatory of the President's deliberations" and squarely protected by the presidential communications privilege. *In re Sealed*

21

*Case*, 121 F.3d at 745–46.  Indeed, the White House Special Counsel made such a showing in his affidavit when he referenced both factual "information" and pre-decisional "advice" in his statement of the "chilling effect on presidential decisionmaking." Sauber Decl. ¶ 14.  The affidavit adequately explains that disclosure of the strategic plans would foreseeably undermine candid, informed, and high-caliber presidential decision-making, interests that the presidential communications privilege has always intended to protect.  *See Loving*, 550 F.3d at 37; *In re Sealed Case*, 121 F.3d at 750.

Additionally, protecting the strategic plans in full under the presidential communications privilege would not harm the public interest as plaintiff claims.  *See* Pl.'s Opp'n at 15–17. Plaintiff contends that application of the presidential communications privilege to the strategic plans would "keep[] otherwise unclassified government operations secret from the American people." *Id.* at 17.  As defendants rightfully note, however, the strategic plans "do not constitute or establish 'law' in the sense of setting forth a decision that binds subordinates or a regulated party." *Judicial Watch*, 913 F.3d at 1113.  Rather, the strategic plans document information and advice "given up the chain to someone (the President) who then made a decision." *Id.*  The D.C. Circuit has clarified that the "secret law" doctrine should be limited to "opinions and interpretations which embody the agency's effective law and policy." *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).  As materials prepared for presidential decision-making, the strategic plans are distinct from working policies and laws of the agencies, which are separately mandated by FOIA to be disclosed to the public.  *See Sears*, 421 U.S. at 153 (interpreting FOIA to "require disclosure of documents which have the force and effect of law" (internal quotation omitted)).  Thus, affording protection of the presidential communications

22

privilege to the strategic plans does not constitute creating "secret law" that harms the interests of the American public.

Defendants have therefore met their burden of establishing that foreseeable harm to the interests protected by the presidential communications privilege would ensue if the strategic plans were disclosed, as required to withhold the documents pursuant to Exemption 5.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  An order consistent with this memorandum opinion will be entered contemporaneously.

Date: July 18, 2023

**BERYL A. HOWELL**
United States District Court Judge